No. 2801

Second Circuit

---

TRAVELERS INDEMNITY CO. v. ROBINSON-SLAGLE LUMBER CO., INC.

---

(Feb. 24, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. Louisiana Digest — Automobiles — Par. 4 (a), 4 (b).

In the absence of regulative ordinance, it is a general rule that where two automobiles are approaching the intersection of two streets that one of them first reaching the intersection is entitled to the right of way; and under such circumstances it is the duty of the driver of the automobile secondly reaching the intersection to proceed with such care as to permit the exercise of this right of way without danger of collision.

Johnson vs. Worley, 3 La. App. 675.

Spainhour vs. Dulaney, 4 La. App. 552.

2. Louisiana Digest — Automobiles — Par. 4 (b), 7 (c).

In the absence of ordinance to the contrary where two automobiles are approaching the intersection of two streets at right angles to each other, the automobile first entering the intersection is entitled to the right of way, generally speaking; and where the driver of the automobile secondly reaching the intersection fails to see the automobile first reaching it until he is right on the automobile, his negligence in so entering the crossing and not keeping a lookout ahead of him, constitutes the proximate cause of the collision.

Berry on Automobiles, 834.

3. Louisiana Digest — Automobiles — Par. 7 (c); Negligence—Par. 26, 27.

A defendant is liable in damages resulting from his negligence if by proper care he could have avoided the damage, even if the person injured was originally guilty of negligence and created the situation of danger to himself.

Dill vs. Colley, 3 La. App. 305.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. E. P. Mills, Judge.

Action by The Travelers Indemnity Co. against Robinson-Slagle Lumber Co.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Melvin F. Johnson, Shreveport, attorney for plaintiff, appellee.

Thatcher & Webb; Alex F. Smith; of Shreveport; attorneys for defendant, appellant.

## STATEMENT OF THE CASE.

REYNOLDS, J.  A motor truck owned by defendant and driven by its employee in the scope of his employment collided with an automobile belonging to Ivy Watson and driven by his daughter and damaged it to the extent of $1665.00.  The automobile was insured by plaintiff against damage in such manner and the plaintiff paid to Ivy Watson the amount of his loss and took from him a subrogation of his claim against the defendant and brought this suit to recover from defendant the amount it had paid to Ivy Watson.  Plaintiff alleged that the collision and resulting damage to Ivy Watson's automobile was the result of negligence on the part of the driver of defendant's motor truck, and that at the time of the accident the driver was acting within the scope of his employment.

Defendant denied that the driver of its motor truck was negligent, and for want of information also denied that at the time of the collision its employee was acting within the scope of his employment.  And in the alternative it alleged that if its driver was negligent that the driver of the damaged automobile was guilty of concurring and contributory negligence and that plaintiff was barred of recovery thereby.

On these issues the case was tried and there was judgment in favor of the plaintiff for the full amount claimed and defendant appealed.

## OPINION.

The amount of damages sued for is abundantly established by the evidence and is nowhere disputed by defendant.  It, therefore, follows that the only question in controversy is whether the driver of defendant's motor truck was negligent and if so, whether his negligence was the proximate cause of the collision.

The fact that the driver of the damaged car reached the intersection of the two streets first is not denied and is clearly established by the evidence.

W. L. Endsley testified, page 52:

"Q.  Who reached that intersection first?
"A.  Before the wreck?
"Q.  Yes.
"A.  Why Miss Watson got there first and would have gotten by if he had kept the way he was coming or turned to his right, but he followed her in—don't you see?"

Miss Watson is the daughter of Ivy Watson and was driving the automobile that was damaged by defendant's motor truck; and the other person referred to by the witness is the driver of defendant's motor truck.

Sam Rountree testified, page 84:

"Q.  Who reached that intersection first?
"A.  Miss Watson.
"Q.  And if the darkey had gone straight ahead he would have missed her, is that true?
"A.  I guess so."

From this evidence it is clear that Miss Watson had the right of way over the intersection.

The evidence also makes it clear that she had driven her car beyond the center of the intersection before the collision occurred.

She testified, pages 2, 5, 6, 13.

"Q.  Did you have a collision at the corner of Garden and Allen streets?
"A.  Yes, sir; after I had passed the center of the street.
"Q.  Just describe that accident in your own words?
"A.  Well, I started from home on Allen avenue going south up the street and I changed gears up the street; I always slow down there because there is a 'slow' sign there and I have lived out there almost twenty years so that it is a habit that I

have always to slow down for the corner —this corner. There were cars on the left hand side by the store and I could not see up Garden street and I got to the intersection of the streets and then I saw this car coming at me fast and I saw that it was going to hit me in the middle so I speeded up my machine and it hit me just as I passed the center, hit me in the back, when he could have gone straight on or turned and avoided the collision.

＊　＊　＊

"Q. At the time of the accident or collision, Miss Watson, where was your car as regarded the intersection?
"A. It was past the intersection of the street almost to the other side of the corner. It was past the intersection.

＊　＊　＊

"Q. Were you about in the middle of the intersection of the two streets when he struck you?
"A. No; I saw him when I was in the middle; just before I got to the corner."

W. L. Endsley testified, pages 48 and 49:

"Q. I wish you would look at that piece of paper on the table there marked P-3 and testify to the best of your knowledge where the actual collision took place? .
"A. Marked which?
"Q. This is marked P-3. There is the corner and here is Castle's store.
"A. (Witness examining document): Here is Garden street. Well, she was more past the center of the street on into Allen across Garden than she was back the other way—do you want me to go on?"

Sam Roundtree testified, pages 80 and 83:

"Q. He ran into the side of the car striking the rear part of the left fender?
"A. Yes, sir.
"Q. In other words, she had almost gotten across?
"A. Yes, sir—just a little more, yes, sir."

＊　＊　＊

"Q. You testified that Miss Watson's car had gotten beyond the center of the street?
"A. Yes, sir."

From this evidence it is clear that Miss Watson's car was run into by defendant's motor truck after it was beyond the center of Garden street and that defendant's motor truck was on the wrong side of the street for the direction in which it was moving at the time of the collision.

The evidence further makes it clear that the driver of defendant's motor truck was not looking ahead at the time of the collision and that he entered the intersection of the two streets at a high rate of speed.

As to this, Miss Watson testified, pages 2 and 6:

"＊　＊　＊　＊　＊ I saw this car coming at me fast and I saw that it was going to hit me in the middle so I speeded up my machine and it hit me just as I had passed the center, hit me in the back, when he could have gone straight on or turned and avoided the collision."

＊　＊　＊

"Q. Miss Watson, I will ask you to take the paper which has been handed to .us by the court and to roughly indicate on that plat, if you can, the position of the cars at the moment of collision?
"A. He was coming right up here and I was coming across here and I saw him right here and I saw he was going to hit me in the center and I speeded up my car and just before I got right he swerved around and followed me and hit me in the back; right here in the back on that wheel. And if he had gone this way or this way he could have avoided it."

O. D. Roshton testified, page 37:

"Q. Did you see the Ford truck in that block?
"A. Yes, sir.
"Q. Under what circumstances?
"A. When I crossed the railroad track the Ford truck passed me going at a high rate of speed and the reason I noticed him he cut in ahead of me and I had to go into the curb to keep him from hitting me, hitting my front fender. That is why I paid attention to him. He went on up Garden street towards Allen avenue.
. "Q. You did not see the collision?
"A. No, sir; I happened to be looking the other way and I did not see until after they had hit. Then I heard the racket, and looked up and it was right in front of me."

W. L. Endsley testified, page 49:

"Q. Was there any reason that you saw why he could not have proceeded straight on ahead?
"A. No, sir; he could have went straight ahead or wheeled to the right and missed her if he had knowed what he was doing."

Z. P. Green testified, pages 24 and 25:

"Q. Mr. Green, what did the darkey tell you?
"A. He said that he was going so fast until he didn't see her until he was right on her and then he said, 'I done all I could to stop', which the evidence showed that he did. He skidded his wheels about five feet (5') from where he hit the car."

R. J. Mehan testified, page 32:

"Q. How fast were you driving, James?
"A. Twenty-five · (25) or thirty (30) miles an hour.
* * *
"Q. When did you first see the other car?
"A. When it was right to the corner.
"Q. How far was it from you?
"A. I was right up on her when I seen her."

From this evidence it is clear that defendant's motor truck entered the intersection of the two streets where the accident occurred at a reckless rate of speed and without the driver looking ahead.

From all the evidence, we are convinced that Miss Margaret Watson, the driver of the damaged automobile, was without fault and that at the time of the accident she showed a cool head and unflinching nerve, and that the proximate cause of the accident was the conduct of the driver of defendant's motor truck in driving the truck into the intersection of the two streets at a reckless rate of speed and without looking ahead of his truck.

In its answer defendant denied that at the time of the collision the driver of its motor truck was acting within the scope of his duty to it, but it does not press this defense in its brief, and the evidence makes it perfectly clear that the driver of the motor truck was in defendant's employ and that at the time of the accident he was acting within the scope of his employment.

For these reasons, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.