DIETRICH & WILTZ v. H. T. COTTAM & CO.

(February 11, 1929. Opinion and Decree.)

Theodore Roehl, of New Orleans, attorney for plaintiff, appellee.

Milo B. Williams, of New Orleans, attorney for defendant, appellant.

JANVIER, J. The automobile collision which gave rise to this suit took place at the uptown, lake side of the corner of Decatur and Dumaine Streets, on Decem-

ber 23, 1927, at about 10:30 o'clock in the morning. These two streets intersect at right angles. Plaintiff's truck was on its wa yup Decatur Street and defendant's truck, just before the accident, had been going down Decatur Street, or, as defendant contends, North Peters Street—Decatur and North Peters Streets at that point are one and the same—and was attempting to turn to its left into Dumaine Street. There is a double line of car tracks on North Peters Street and in the river side track there was a switch which connected that track with another which continued into Dumaine Street.

At Dumaine Street, North Peters and Decatur Street converge and form one street for a few blocks, so that it is difficult to tell whether the street at that particular corner should be called Decatur or North Peters. This, however, is of little moment in this case. Plaintiff claims that its truck had stopped just before crossing Dumaine Street and that it started again at a slow speed, and that, just as its front wheels reached a point a foot or so beyond the upper line of Dumaine Street, defendant's truck emerged suddenly around the rear of a street car bound uptown and ran into the left front wheel of plaintiff's truck.

Defendant contends that its truck had the right of way and had made the turn into Dumaine Street, when it was run into from the side by plaintiff's truck, which, according to defendant, had not stopped before attempting to cross Dumaine Street, and which could not be effectively stopped because of alleged defective brakes.

The evidence on many points is conflicting, but we think that it is conclusively shown that defendant's truck turned to its left immediately around the rear end of the street car which had been stopped on the uptown side of Dumaine Street, and thus emerged suddenly into a place dangerous both to itself and to the other truck. In Cahn vs. Hoffman, 3 La. App. 688, the Court of Appeal for the Second Circuit was dealing with facts very similar to those presented here, and in that case said:

"The driver of a car approaching an intersection is obliged to observe what is approaching on the street he intersects, and even if we concede that the chauffeur arrived at the intersection at the same time as the defendant (the evidence indicating that he arrived at the point after the defendant) the situation would be that while he observed the street car obstructed his view, he proceeded to cross the street without further observation, with the resulting collision."

In that case the driver of the automobile which emerged from behind the street car was seeking to collect damages from the other car, which is the reverse of the situation here, but the Court held that damages could not be recovered, as the driver of that car was at fault.

It is also conclusively shown that in attempting to turn into Dumaine Street, defendant's truck did not make a long turn, keeping to its right, as it was required to do under the general traffic ordinance (No. 7490 C. C. S., Art. 1, par. 4), but, on the contrary, made a short turn, keeping to its left, and would have entered Dumaine Street alongside the left or uptown curb of that street and in violation of the ordinance referred to but for the fact that as soon as its driver, whose view had been obstructed by the street car, saw plaintiff's truck, he swerved still more to the left in an effort to avoid a collision. Had defendant's truck made a long turn, there would have been ample time, after it emerged from its position of obscurity, for each driver to have seen

the' others' truck, and to have avoided a crash. As this Court said in Hudson vs. Jackson Brewing Co., 4 La. App. 549:

"The municipal ordinance, which is in evidence, requires all vehicles, in turning to left, into an intersecting street, to pass the center of the intersection on the extreme right, before turning. The ordinance also expressly prohibits all vehicles taking a diagonal course into the intersecting street, giving illustrations of both methods of turning to the left, as the right and wrong way to turn."

In the syllabus of the Hudson case the Court also said:

"When the driver of a motor truck violates a city ordinance, prescribing the proper method of making a left turn, and such violation is the cause of an accident, the owner of the truck will be held responsible."

Defendant claims that its truck had the right of way because plaintiff's truck was on Decatur Street, on which there were no car tracks, whereas defendant's truck was turning from North Peters Street into Dumaine Street, on both of which streets there were car tracks. Sub-paragraph (a) of paragraph 7 of Article 1 of the General Traffic Ordinance referred to above provides that "vehicles on streets with street car tracks shall have the right of way."

The answer to this contention, however, is that for the purposes of the operation of the ordinance, Decatur Street and North Peters Street at that point, as we have already stated, really form only one street and the car tracks are just as much on Decatur Street as they are on North Peters. We therefore do not feel that the section of the ordinance referred to gave to the defendant's truck in the situation described the right of way over the plaintiff's truck. Furthermore, even though a vehicle on a right of way street may have the right of way over one on an intersecting street, this right does not come into existence until the vehicle has turned into the right of way street. Where two vehicles are approaching each other, coming in opposite directions, and one intends to turn into a right of way street and across the route traversed or about to be traversed by the other, the driver of the one intending to turn must give to the other time to get out of the way, and cannot, on the theory that it is about to enter a right of way street, claim that the other should stop and let it go by.

This Court, in Taylor vs. Crescent City Mfg. Co., 5 La. App. 655, in a syllabus of the case, said:

"On turning corners chauffeurs should not only hold out their hand as required by the ordinance, but make sure that by suddenly turning, they do not drive across the path of another oncoming automobile."

It is true that in the Taylor case the two automobiles were proceeding alongside each other in the same direction, but the principle of law involved is the same, whether they be proceeding in the same direction or in opposite directions, and that principle is that, no matter which may have the right of way, neither can turn across the path of the other, unless it has plenty of time to cross in front of the other, or unless it gives the other plenty of time to get out of the way.

Furthermore, the right of way gives to one party the right to proceed only when both reach an intersection at approximately the same time and here it is manifest that plaintiff's truck not only reached the intersection first, but, in fact, was practically across it when struck by defendant's. As was said by this Court in Vance vs. Poree, 5 La. App. 109:

"* * * the Ford being near the neutral ground when struck, must have entered

the intersection some little time before the Studebaker and therefore may be said to have preempted the crossing, and the Studebaker, notwithstanding its right of way, should not have proceeded under the circumstances, but should have given way to the Ford, for, as we have frequently held, the right of way confers no exclusive right to the possessor to monopolize the streets and intersections."

Defendant claims that plaintiff's driver was at least contributorily negligent because he states that he saw the other truck when it was still forty-seven feet away, and that if he did see it at this distance, he himself had time to stop. We do not believe that plaintiff's driver is correctly reported on this point, because at another point in his testimony he states that the other truck was only two feet from him when he first saw it, as it turned suddenly upon him around the rear of the car. This latter statement seems to be so well corroborated by the physical facts, and is so utterly inconsistent with the other statement that we feel certain that plaintiff's driver either did not understand the question, or was incorrectly reported in the first instance.

Mrs. Katiski's evidence is not in line with the physical facts and as she in her testimony became very much confused, it seems that her recollection of what she saw is quite imperfect.

There is no dispute as to the extent of the physical damage to plaintiff's truck. As to the loss of use of the truck, there is, however, room for controversy, and were it not for the finding of the trial court, we would not be prepared to say that this item was conclusively proved. However, the trial judge saw and heard all the witnesses and was better able to judge of their credibility and of the weight to be given to their testimony. Whether the brakes on plaintiff's car were in good condition was a controverted question, but we believe that the evidence shows that the truck was stopped promptly and efficiently, and we fail to see that the brakes on that truck, even if they were defective, could have been a contributing cause of the accident, as that truck did not run into the other, but was, in fact, run into from its side by defendant's truck.

The amount allowed plaintiff by the trial judge was $205.50, with legal interest from judicial demand and all costs, and we think this judgment is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, at the cost of appellant.