### HAMILTON v. LEE et al.*
#### No. 4411.

Court of Appeal of Louisiana. Second Circuit.
Nov. 10, 1932.

Lee, Gilmer & Lee and Cook & Cook, all of Shreveport, for appellants.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

DREW, J.

This suit is brought by E. Clint Hamilton for himself and for the benefit of his interdicted wife, Mrs. Beth Gayle Hamilton. The amount of damages claimed is $21,355, itemized in the amount of $3,464.05 for expenses and the remainder for pain and suffering and permanent injuries. The defendants in this case are Elmo P. Lee, the owner of the automobile with which the collision occurred and which was being driven by Miss Beth Lee, his minor daughter, and the New Amsterdam Casualty Company, which carries a liability policy upon the Lee car in the amount of $10,000 and a property damage thereon of $5,000.

The collision took place at the corner of Ockley drive and Anniston street in the Broadmoor section of Shreveport, La., at about 7 o'clock p. m., on February 9, 1931. It is alleged that at that hour Mrs. Hamilton was driving south on Anniston street when she was struck when she reached the intersection of that street with Ockley drive; that her car had almost crossed the intersection and was almost out of it when she was hit by the Lee car, which, it is alleged, was speeding at the rate of 55 or 60 miles per hour. The negligence of the driver of the Lee car is stated to be: (a) Its speed; (b) its failure to slow down at the intersection of the two streets or to bring the car under control; and (c) failure to keep a proper lookout for other cars.

The answer admits the collision, but denies the negligence of the driver of the Lee car and affirmatively pleads the contributory negligence of Mrs. Hamilton. The particular elements of contributory negligence are set forth as follows:

(a) That she was familiar with the traffic conditions at the point of collision and disregarded same by approaching and entering the intersection at an excessive rate of speed, which defendant alleged to be not less than 35 or 40 miles per hour;

(b) That she entered the intersection without slowing up or bringing her car under control;

(c) That she failed to keep a proper lookout for approaching traffic and drove in front of the Lee car, though she could have seen its approach for many hundred feet;

(d) That either her lights were not burning, or alternatively, if they were, they were so dim as to be unobserved by an approaching car at right angles.

In addition to the answer, the defendant the New Amsterdam Casualty Company reconvened against the plaintiff for the amount of damage done to the Lee car, which was alleged to have been $1,950.

The defendant Lee substantially answered the same as the New Amsterdam Casualty Company and reconvened for $336, being the amount of expenses which he incurred by reason of injury to his daughter.

Upon these pleadings the case went to trial and resulted in a judgment in the lower court in favor of the plaintiff, and against both defendants, Elmo P. Lee and the New Amsterdam Casualty Company, in solido, in the sum of $10,355, and against the defendant Elmo P. Lee, individually, in the further sum of $5,109.50. Both of the sums were to bear legal interest from judicial demand. The reconventional demand of Elmo P. Lee was rejected, but there was granted in favor of Elmo P. Lee, and against the New Amsterdam Casualty Company, a judgment over in the amount of $10,355. The reconventional demand of the New Amsterdam Casualty Company was likewise rejected.

From this judgment, both defendants have appealed.

The record discloses without contradiction that Miss Lee was negligent in all three respects charged by plaintiff. The traffic ordinance of the city of Shreveport fixes the speed limit on Ockley drive at 18 miles per hour. Miss Lee testified that she did not look at her speedometer, but she imagined she was traveling about 40 or 45 miles per hour. She stated, however, that she did not know. The other testimony as to the speed of her car a few seconds before the accident and the physical evidence justifies us in finding that the speed of defendant's car was in excess of what Miss Lee imagined. It is not even contended by defendant that Miss Lee attempted to slow down at the intersection or bring her car under control, and the physical evidence conclusively shows that she did not. Likewise, the record is clear that she failed to keep a proper lookout for other cars. There was no obstruction to prevent Miss Lee from seeing the car driven by Mrs. Hamilton, yet Miss Lee testified:

" * * * When I first observed the automobile it was, I imagine, about 15 feet or 20 feet away to my left: about as far from my left as it was in front of me. I applied my foot brakes."

Plaintiff has therefore made out his case and is entitled to recover, unless the driver of plaintiff's car was guilty of contributory negligence.

The first two elements of contributory negligence alleged are that Mrs. Hamilton was familiar with traffic conditions at the point of the collision and disregarded same

by approaching and entering the intersection at an excessive speed; that she failed to slow up or bring her car under control. The plea of contributory negligence is an affirmative defense, and the burden is on the one pleading it to prove it. Mrs. Hamilton, the driver of plaintiff's car, had been interdicted prior to the trial of this case and, due to her nervous and mental condition, did not testify in the case. The only other person who actually saw the accident was Miss Lee, the driver of defendant's car, who testified that when she first observed plaintiff's car—and it could not have been more than a fraction of a second prior to the accident—she imagined it was about 15 or 20 feet to her left and about as far to the left as it was in front of her.

Mr. Roy Scales testified that he was at the scene of the accident within three or four minutes after it happened. After looking over the scene of the accident and assisting in moving Mrs. Hamilton into a nearby house, which occupied two or three minutes of time, that he went over to Mr. Lessigne's house, where he found Miss Lee lying on the bathroom floor; that she was entirely rational, and had complete control of her faculties, as was demonstrated by the questions she asked. He asked Miss Lee who else was in the wreck, to which she replied that she did not know what had happened; that all she knew about it was that she had flown through the air and turned over so many times she did not know whether she would come out of it alive or not; and that she had no idea what had caused the accident, as she had seen no one or anything.

There is no other evidence in the record, other than Miss Lee's, by any one who claimed to have seen the accident, and she does not testify to any other fact regarding the manner in which Mrs. Hamilton was driving; therefore, there is no positive testimony as to the speed of plaintiff's car or that plaintiff's car entered the intersection without slowing down or that Mrs. Hamilton failed to keep a proper lookout. The record does disclose that Mrs. Hamilton was familiar with the traffic conditions at the intersection where the accident occurred.

Defendants contend that the physical facts, taken in connection with Miss Lee's testimony, that when she first observed plaintiff's car it was 15 to 20 feet away to the left and a like distance in front of her, show conclusively that plaintiff's car was traveling equally as fast, if not faster, than defendant's car, for the reason that plaintiff's car was struck by defendant's car full on its side at a time when plaintiff's car had more than half crossed the intersection; that is, that plaintiff's car, after having been observed by Miss Lee, had traveled as far or farther than the Lee car. If the statement of Miss Lee, relied upon by defendant, could be taken as correct as to distance, his contention might be sound. But the statement of Miss Lee made to Mr. Scales a few minutes after the accident is directly in conflict with the statement made in her deposition. It is not contended by any one that Miss Lee has purposely misstated the facts, and the court is sure she has not. Her testimony is that she "imagined it was about 15 or 20 feet away to her left * * *." In other words, it was a mere guess or estimate, without anything on which to base the guess or estimate. At most, the space of time between the time she first observed plaintiff's car and the accident could have been only a small fraction of a second. At the very instant, almost, that she saw plaintiff's car, she collided with it, and it was humanly impossible for her or any one else in a like situation to have been able to give the correct position of the two cars.

The testimony above cited and the physical facts do not show that plaintiff's car was traveling at an excessive rate of speed when it entered the intersection or that she failed to slow down before entering the intersection.

The third element of contributory negligence is that Mrs. Hamilton failed to keep a proper lookout and drove in front of defendant's car, although she could have seen it approaching for many hundred feet. On this allegation the defense is mainly based.

On February 9, 1931, about 7 o'clock p. m., Mrs. Hamilton, the wife of plaintiff, was driving along Anniston street in the Broadmoor residential section of Shreveport, going in a southeasterly direction, and was crossing Ockley drive at a point where it intersects with Anniston street, when her car, an Essex sedan, was struck by a Packard sedan, owned by the defendant Lee, and driven by Miss Lee, his minor daughter, who at the time was traveling along Ockley drive in a northeasterly direction. At the time of the collision, plaintiff's car had passed the center of the intersection and the impact occurred when both cars were in the south quarter of the intersection. Ockley drive runs northeast and southwest, and Anniston street runs northwest and southeast. The physical evidence clearly establishes the place where the impact took place and conclusively shows that both drivers were on their respective right side of the street. The defendant's car, the Packard sedan, was much heavier than plaintiff's car, an Essex sedan, and the speed of defendant's car at the time of the impact was sufficient to hurl or drag plaintiff's car up Ockley drive, the direction defendant's car was traveling, a distance of 66 feet. In its course it bent over an iron post and completely demolished plaintiff's car. Although plaintiff's car was carried only 66 feet, the record discloses that its driver, Mrs. Hamilton, was thrown out of the car and landed 11 feet far-

ther up Ockley drive to the right of the street. Defendant's car continued past plaintiff's car and, after turning over several times, landed on its wheels headed in the direction from which it came, and at a point 100 feet northeast of the point of impact. Defendant's car was damaged to the extent of $1,950. Parts of the two cars were scattered over the road, including cushions, gas tank, batteries, etc. The noise made by the impact of the two cars was very loud; in fact, it was heard for several blocks distant and most of the witnesses who heard the noise thought at first it was an explosion. Miss Lee was cut and bruised about the face, head, and body. Mrs. Hamilton was severely injured, as we will show later on in this opinion. The photographs filed in evidence, as well as the testimony of numerous witnesses, show that the front of defendant's car impacted squarely against the right side of plaintiff's car, and the rims of the headlights of defendant's car were imbedded, one in each the front and rear door of plaintiff's car, clearly leaving their imprint. It likewise shows that the greater part of the damage to plaintiff's car was done to the rear portion of the car.

Defendant's car impacted the plaintiff's car with such force as to render negative the forward motion of plaintiff's car, which from the time of the impact, changed its forward motion along Anniston street to a sidewise motion along Ockley drive, in the direction which defendant's car was moving, and was carried or dragged by defendant's car for a distance of 66 feet, where it was thrown to the side of the road. The weight of the two cars, no doubt, had something to do with this; but the principal cause for the change of direction by plaintiff's car was the great speed of defendant's car and argues likewise that plaintiff's car was traveling at a moderate rate of speed.

Defendant has failed to show that plaintiff's car was exceeding the speed limit of 18 miles per hour. Every one is presumed to observe the law until the contrary is proved; therefore, we are justified in saying plaintiff's car was not exceeding 18 miles per hour, the speed limit fixed by ordinance of the city of Shreveport. Willis v. Standard Oil Co. of La., 17 La. App. 217, 135 So. 777.

The testimony and photographs in the record disclose that as plaintiff and defendant's cars were approaching the intersection where the accident occurred, there was no obstruction to prevent the drivers from seeing each other from the time they were each a distance of several hundred feet from the intersection. The photographs show that when plaintiff's car was 150 feet from the intersection, the driver could have seen defendant's car a distance of 482½ feet from the intersection; and that when plaintiff's car was 200 feet from the intersection, the driver could have seen defendant's car a distance of 350 feet from the intersection. The point at which the driver of plaintiff's car could see defendant's car, is, of course, the same point that defendant's driver could have seen plaintiff's car. Due to the great distance that each driver could see the other, before entering the intersection, the defendant contends that no person of reasonable prudence and care could possibly have had a collision such as was had at this intersection, and invokes the well-settled rule that one must see and is held to have seen that which he should have seen, if he exercised ordinary care and caution for his own safety and the safety of others.

The record is silent as to what Mrs. Hamilton, the driver of plaintiff's car, saw just before and when she entered the intersection, as to whether she ever looked in the direction of the on-coming car of defendant or not, as well as to what she thought when attempting to cross the intersection. There is no positive testimony as to the distance from the intersection the defendant's car was at the time Mrs. Hamilton entered the intersection. Under the rule above stated, Mrs. Hamilton, by exercising ordinary care and caution for her own safety and the safety of others, could have seen the approach of defendant's car, and is held to have seen it, and she is held to the same accountability whether she saw it or not. That brings us to the question of whether or not, under the circumstances prevailing at that time, she was justified in attempting to cross the intersection.

Neither street, Ockley drive nor Anniston, was designated by law as a right of way street. The question of favored or unfavored street, therefore, does not enter. We are first concerned with where or how far distant from the intersection was Mrs. Hamilton when she observed defendant's car, and how close to the intersection she must be when the law requires her to look for approaching cars? The record is silent as to where Mrs. Hamilton was when she observed the approaching car of defendant, if she ever observed it. The last part of the question has been answered by us in the case of McDonald v. Stellwagon, 140 So. 133, 136, on which point the Supreme Court refused a writ, in the following language:

"It is argued that Gilbert did not look when at the right place to look. We think he did. He was not required to drive into the edge of the intersection and then stop and look. He looked from a point where he could see for at least half a block and knew he could traverse the intersection before any one who was farther off, and who was observing the speed laws, could arrive at the intersection. * * *

"It is further argued that, after Gilbert entered the intersection, he should have seen the on-coming car of Stellwagon. He was not

required to do the impossible. He could not look to the east, west, and in front of him at the same time, and he necessarily had to pay some attention to his car. He took all the precaution and care before entering the intersection that any reasonable man could take, and was fully justified in attempting to cross."

Berry on Automobiles (6th Ed.) vol. 1, § 1049, reads as follows:

"A driver approaching an intersection saw a machine approaching about 150 feet distant from his right. He kept on without again looking, and was almost across the intersection when he was struck by the other car. Held, that he was not contributorily negligent as a matter of law in not looking to the right again after entering the intersection." Citing Ellis v. Olson, 139 Wash. 351, 246 P. 944.

Huddy's Encyclopedia of Automobile Law (9th Ed.) vol. 3-4, p. 230, under the heading "Side Lookouts," reads in part as follows: "He need not, however, look as far as his eye can reach, but only sufficiently far to enable him to discover vehicles within the limit of danger." Citing the following ruling from Taxicab Co. v. Ottenritter, 151 Md. 525, 135 A. 587, 589: "It was not necessary for the plaintiff to look as far as his eye could reach to his right before proceeding across the intersecting street. His duty in that respect was performed if he looked sufficiently far to his right to discover that there was no traffic approaching from that direction within a distance that would not be traversed by a vehicle driven at a speed permitted by the law. He was not required to look always to his right while crossing the street, as he had to avoid endangering travel ahead of him, or approaching from his left."

Again, Berry on Automobiles (6th Ed.) vol. 1, § 1045, p. 890, says:

"If the driver who has not the right-of-way, looked when considerable distance from the crossing and was justified in the belief that he had ample time to cross in front of a machine having the right-of-way, he was not negligent, as a matter of law, in not making subsequent observations." Citing Werner v. Yellow Cab Co., 177 Wis. 592, 188 N. W. 77.

 We therefore conclude that the law did not require the driver of plaintiff's car to look for on-coming cars at any particular distance from the intersection. If she looked at a time when she was 50 feet from the point of accident and saw an approaching car on the other street, at a distance of 150 to 200 feet, it was not necessary for her to continue to look at the on-coming car. She would be justified in giving her attention to the other direction in which she must look, that is, to her left and in front of her. She would know that she had sufficient time to cross the intersection before the on-coming car would reach the intersection, if it obeyed the speed laws

of the city. She was justified in assuming that the on-coming car would obey the speed laws. McDonald v. Stellwagon (La. App.) 140 So. 133; Ford v. Tremont Lbr. Co., 123 La. 742, 49 So. 492, 22 L. R. A. (N. S.) 917, 131 Am. St. Rep. 370; Damonte v. Patton, 118 La. 530, 43 So. 153, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384, 10 Ann. Cas. 862; Maritzky v. Shreveport Rys. Co., 144 La. 692, 81 So. 253; Bethancourt v. Bayhi et al. (La. App.) 141 So. 111; Brunson v. Barnwell, 11 La. App. 663, 124 So. 564; Simpson v. Pardue, 15 La. App. 341, 131 So. 854; Fisher v. Levin, 16 La. App. 368, 134 So. 439; Richey v. Brasher, 7 La. App. 506.

 However, she would not be justified if she, acting as a reasonable person, would and should have known that the on-coming car was making excessive speed, and she did not have time to get across.

 Defendant relies to a great extent upon the cases of Hyman v. Salzer Plumbing Company, 18 La. App. 188, 135 So. 703, 138 So. 132, and O'Day v. Kapanica, 18 La. App. 634, 138 So. 472, to sustain his contention that plaintiff's driver must have seen the speed of the car, or at least she was held to the obligation of ascertaining its speed before reaching the conclusion as to what she should do. The case of O'Day v. Kapanica is not applicable to the case at bar on this point. The court in that case reversed the lower court on facts and stated it did not believe the plaintiff's testimony. Plaintiff was on an unfavored street and defendant was on a right of way street. The court held that under the facts as found by it, plaintiff did not take the precaution he should have before entering the intersection. The court then stated, and which was unnecessary to the decision: "If the truck was speeding along at 30 miles an hour, and if O'Day was driving at only 5 miles an hour, he had the better opportunity to stop, and he should have done so, especially since the street was wet with water and sleet. His failure to see the truck cannot be excused, since, manifestly, it was on the street, and was in view of any one who might look."

The case of Hyman v. Salzer Plumbing Company, Inc., is authority for the contention made by defendant. The decision is by the Orleans Court of Appeal, rendered July 1, 1931, with Moreno, Judge ad hoc, as the organ of the court. The decision clearly lays down the rule contended for by defendant. The decision cites no authority of this state, or any other state of the Union, to justify the rule, and is in direct conflict with the doctrine laid down by Berry on Automobiles (6th Ed.) and Huddy's Encyclopedia of Automobile Law (9th Ed.) followed by the courts of this state and almost every other state in the Union, which is: If a motorist, as a reasonable, cautious, and prudent person, believes

that he will be able to drive over the intersection before the other machine approaching on the street or highway reaches it, he is not negligent in attempting to do so. The test is not the actual speed of the approaching car, but whether the one attempting to cross the intersection in front of the approaching car acted as any ordinary, prudent, reasonable, and cautious person would have done under like circumstances. From other jurisdictions so holding are: Wagner v. Kloster, 188 Iowa, 174, 175 N. W. 840; Werner v. Yellow Cab Co., 177 Wis. 592, 188 N. W. 77; Grant v. Marshall, 2 W. W. Harr. (32 Del.) 239, 121 A. 664; Ward v. Giddea, 44 Cal. App. 380, 186 P. 612; Shuck v. Keefe, 205 Iowa, 365, 218 N. W. 31; Schultz v. Nicholson, 116 Misc. 114, 189 N. Y. S. 722; Pline v. Parsons, 231 Mich. 466, 204 N. W. 131; Virginia R. & P. Co. v. N. H. Slack Gro. Co., 126 Va. 685, 101 S. E. 878; Lee v. Pesterfield, 77 Okl. 317, 118 P. 674; Bramley v. Dilworth (C. C. A.) 274 F. 267; Neumann v. Apter, 95 Conn. 695, 112 A. 350, 21 A. L. R. 970.

And from our own state, the following decisions: Brunson v. Barnwell, supra; Bethancourt v. Bayhi, supra; Simpson v. Pardue, supra; Fisher v. Levin, supra; Richey v. Brasher, supra; McDonald v. Stellwagon, supra.

We think the rule heretofore followed by this court and other courts of this state, as well as the courts in most of the other jurisdictions in the United States, is a correct rule.

The physical evidence discloses without doubt that plaintiff's car entered the intersection first and had traversed at least half of it before being struck by defendant's car. The automobile entering the intersection of two streets first is, generally speaking, entitled to the right of way, and it is the duty of a motorist approaching at right angles to avoid colliding therewith, and if he fails to do so, it is negligence. Berry on Automobiles (6th Ed.) vol. 1, p. 892, § 1045. Citing cases from California, Kentucky, Missouri, Nebraska, New Jersey, Oregon, Pennsylvania, Washington, Wisconsin, and other states. Johnston et al. v. Worley, 3 La. App. 675; Borrello v. Rohrer, 4 La. App. 510; Spainhour v. Dulaney, 4 La. App. 552; Hirsch v. Ashford, 5 La. App. 290; Travelers Ind. Co. v. Robinson-Slagle Lbr. Co., 7 La. App. 441; Smyth v. Hill Stores, Inc., 8 La. App. 246; Item Co., Ltd., v. Checker Cab Co., 9 La. App. 397, 120 So. 509; Dietrich & Wiltz v. H. T. Cottam & Co., 9 La. App. 740, 120 So. 262; Marshall v. Freeman, 10 La. App. 12, 120 So. 414; Middleton v. Jordan, 10 La. App. 189, 120 So. 668; Lepinay v. Vitrano, 12 La. App. 475, 125 So. 304; Shields v. Suc. of Hodge, 13 La. App. 546, 128 So. 530; Poole v. Perretz, 13 La. App. 110, 127 So. 439; Cooke v. Seegers, 17 La. App. 313, 136 So. 216.

Plaintiff's car reached the intersection first and was entitled to the right of way. The law required the driver of defendant's car to bring her car to a stop and let plaintiff's car pass. Plaintiff had the right to assume that defendant would observe the law and not drive into plaintiff's car. It was therefore not negligence for the driver of plaintiff's car to attempt to cross the intersection, unless the speed of defendant's car was known to her, and the distance of defendant's car from the intersection was so short that a prudent and careful driver should have known of the danger of attempting to cross. It is incumbent upon defendant to prove this state of facts.

The "point of intersection," as defined by Huddy Encyclopedia of Automobile Law (9th Ed.) vol. 3-4, p. 249, is "the space common to intersecting streets where they join, and not the point where the paths of two automobiles approaching the intersection would cross each other."

Ockley drive and Anniston street each has a surface of 16 feet and grass shoulders; at the intersection all corners are rounded. Mr. Barnes, a civil engineer witness for defendant, said:

"The intersection widens with a large radius and the intersection itself is of a variable width."

He also testified:

" * * * That the width of the intersection at various places will give you various results * * *.

" * * * You might say the widest part of the intersection will run in the neighborhood of 55 feet. That in the north and south directions; in the east and west directions, the intersection is slightly less than 50 feet, or about 48 feet. That is, from the radius of the return diagonally across the intersection to the other return."

Mr. Barnes further testified on cross-examination as follows:

"Q. Mr. Barnes, what is the width of Ockley out from the center of the intersection of Ockley and Anniston? Look on your map there and tell us. A. I can only give it to you as the diagonal width. The width of Ockley Drive at the intersection is indefinite because all up and down Anniston would be unlimited.

"Q. If the side lines of Ockley Drive were extended actually on the ground as they are on the map, how wide would it be? In other words how wide is the right-of-way there? A. The right-of-way of Ockley is 80 feet.

"Q. Eighty feet? A. Eighty feet.

"Q. At the center of the intersection of Ockley Drive and Anniston Street is there pavement that is 80 feet wide within that right-of-way of Ockley? A. The full eighty feet.

"Q. The full 80 feet. The same thing is true with the other street as to the width of Anniston Street at the point where it intersects Ockley? A. The paving on Anniston would cover the entire 80 feet across Ockley Drive and the paving on Ockley Drive would cover the entire 60 feet on Anniston.

"Q. That is true with regard to the pavement at the center of the intersection? A. The length of that paving at that intersection would be alternately 60 feet and 80 feet.

"Q. That is all? A. Within the intersection."

We therefore find the width of the intersection, as crossed by Anniston street, from a point where the corners begin to curve on one side of Ockley drive to the point they begin to curve to the other side of Ockley drive, is 80 feet. If Mrs. Hamilton, on arriving at the place where the curve of the corner of Anniston street began, had looked in the direction of defendant's car, she would have been at least 40 feet from the point of the collision. If she had been traveling at the rate of 10 miles per hour (and it is not proved that she was traveling faster), and defendant's car at the rate of 50 miles per hour (which it was), the defendant's car would have been 200 feet from the point of the collision. If plaintiff's car had been traveling 5 miles per hour, defendant's car would have been 400 feet from the point of the collision. In either instance, Mrs. Hamilton would not have been guilty of contributory negligence in entering the intersection. She would have been justified in relying upon the assumption that defendant's car was not exceeding the speed limit of 18 miles per hour and on the further assumption that it would stop and give her the right of way which the law gave her.

In the case of Willis v. Standard Oil Company, 17 La. App. 217, 135 So. 777, 779, the court said:

"* * * It is almost impossible for a party driving an automobile to accurately judge the speed of an oncoming car without close and very careful observation for a period of time longer than a hurried look."

In this case, the cars were coming at right angles to each other, as in the case at bar. However, in the case at bar, outside of the assumption given by law, we have the testimony of three traffic policemen who swore that it is impossible to judge the speed of a car at nighttime, when it is coming at right angles to you. A guess at the speed under such conditions is so uncertain that they were never willing to arrest a driver or base a charge of speeding thereon.

If the courts should adopt the rule contended for by defendant, it would be almost impossible for a motorist on an unfavored street to ever cross a favored street, and he would always have to cross it at his own peril.

The fourth charge of contributory negligence is that either the lights of plaintiff's car were not burning, or alternately, if they were, they were so dim as to be unobserved by an approaching car at right angles. This allegation is based solely upon the testimony of Miss Lee, as follows:

"When I first observed Mrs. Hamilton's car, it seems as if she had on her parking lights. At any rate, her lights were very feeble."

This is the only testimony regarding the lights of plaintiff's car that can be found in the record, and is not sufficient to establish negligence as to lights. When Miss Lee saw plaintiff's car, she was practically upon it, and it was within the radius of the lights of her car, and whatever her impression might have been at that time, it is sufficient to say that her own lights from the Packard car could have made the lights on plaintiff's car look dim or feeble. Furthermore, there is nothing in the testimony of Miss Lee to show that she ever looked for approaching cars, or to justify us in saying she would have seen the lights on plaintiff's car, if they had been as bright as the lights on a Ford car. Furthermore, the lights on defendant's car were on bright and, if a proper lookout had been kept by Miss Lee, she could have seen plaintiff's car in sufficient time to have stopped; if not, to have turned to its rear and missed it.

We might further add that our former discussion of Miss Lee's testimony as to what she saw at the time is applicable to this testimony, and we do not think, under the circumstances, it is sufficient to make out a charge of contributory negligence, if the failure to have bright lights on plaintiff's car could be held to constitute contributory negligence, which we do not hold. This court, in dealing with the question of contributory negligence, in the case of Shields v. Succession of Hodge, 13 La. App. 546, 128 So. 530, 533, had the following to say:

"The testimony as a whole does not warrant the holding that plaintiff was exceeding the speed limit at the time of the collision. But even if it be conceded that she was, and, therefore, guilty of negligence in that respect, it does not necessarily follow that, as a matter of law, she cannot recover. Counsel in their brief say that contributory negligence defeats recovery, even though the negligent act consisted in the violation of a statute or ordinance. That is true, of course, if plaintiff's negligence in that respect contributed to the accident and injury as the proximate cause thereof. Contributory negligence defeats recovery in cases of this kind. But a plaintiff may be guilty of negligence and still recover, because a negligent act

may not amount to 'contributory negligence' in its legal sense, and it is only 'contributory negligence' in its legal sense which defeats recovery.

" 'Contributory negligence in its legal significance is such an act or omission on the part of plaintiff, amounting to an ordinary want of care, as concurring with the negligent act of defendant is the proximate cause or occasion of the injury complained of.' 29 Cyc. p. 505; 28 Cyc. p. 38.

" 'The mere collateral wrongdoing of the injured person cannot of itself defeat the right of recovery for the injury if it did not proximately contribute thereto, and, although one injured in an automobile accident may have been guilty of negligence, yet, if his negligence did not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar recovery.' Blashfield's Enc. of Automobile Law (1927), vol. 2, p. 1209. See, also, Words and Phrases, First, Second and Third Series, Contributory Negligence."

We therefore conclude that defendant has failed to establish by proof, as required by law, the defense of contributory negligence, and that the sole proximate cause of the accident was the excessive speed of defendant's car; failure on the part of its driver to keep a proper lookout, and to slow down at the intersection so as to have her car under control.

■ Plaintiff has alleged injury to his wife and expense incurred, by reason of the accident, as follows:

"That your petitioner's wife was thrown by the force of the collision through the side or top of her automobile and was found unconscious in a pool of blood some 88 feet from the point of collision.

"That your petitioner's wife was terribly injured as a result of the collision, being broken, bruised and cut in a number of places; her pelvis bone being fractured both in front and rear; her right antrum was injured; her lips cut through; and a part of her gums even being stripped from her teeth. Two of her principal teeth were knocked out and two others were broken off and embedded in the gums. She had a deep scalp wound in the pereital region; her forehead was deeply cut above her right eye; her chin cut open in two places; her hands and legs were lacerated; in fact, she was so torn, bruised, lacerated, cut and stunned that her ultimate recovery was for several weeks thereafter considered highly doubtful.

"That your petitioner's wife was kept in first the Highland Sanitarium and subsequently in the Schumpert Sanitarium in the city of Shreveport, from February 9, 1931, to April 24, 1931, in both of which sanitariums she received the best medical and nursing attention; but the shock to her entire nervous system was so severe and acute that she was apparently unconscious or irrational for the greater part of the time during a period of more than nine weeks; that at times she appeared to be in great agony and required repeated spinal punctures to relieve the abnormal pressure on her brain, which punctures were themselves excruciatingly painful; that during her intervals of consciousness her physical and mental sufferings were intense and that she has not recovered and probably will never fully recover from the effect of the shock to her nervous system caused by the bodily injuries as hereinabove set out.

"That your petitioner and his said wife have three children who are respectively three, five and seven years of age and that during her intermittent periods of consciousness your petitioner's wife was greatly disturbed and worried over her enforced absence from her children, thus accentuating her distress and prolonging her recovery.

"That prior to being injured as heretofore described, your petitioner's wife was an unusually healthy, strong and energetic young woman, of an exceptionally pleasant and happy disposition; her memory was excellent; her nerves were steady; she was inclined to be calm under stress; she was wholly devoted to her children and husband and thoroughly capable of taking care of herself, her children and her home.

"That since being injured as heretofore stated, your petitioner's wife is a changed person, although she struggles bravely to be her old self again; she is suffering from what the doctors call traumatic oedema of the brain, being an after result of concussion of the brain, petechial hemorrages and traumatic psychosis; she is highly nervous and excitable, worries much and becomes angry at small things that she formerly laughed at, is unable to concentrate normally, cannot think as clearly nor as continuously as before, and has to be guarded as closely as possible against any physical or nervous shock; in fact her nervous and mental condition are such that your petitioner was forced much against his will to apply for and obtain her interdiction.

"Your petitioner is informed by the expert physicians whom he employed and still employs for his wife and therefore alleges that the chances of her ultimate complete recovery and return to normalcy are very slight indeed.

"That in addition to the grave nervous disorders and mental aberration heretofore described, your petitioner's wife has suffered the following permanent physical injuries and disfigurements:

"(a) Her face is badly scarred; particularly on her lip and forehead;

"(b) She has lost two teeth and part of

two others, one of which will undoubtedly have to be extracted;

"(c) Part of her gums has been completely torn away and while healed has not grown out to the same extent;

"(d) She has a fractured pelvis bone, consisting of fracture of the os pubic bone in front and the ischium posteriorly.

"That your petitioner has been put to great expense by reason of the injuries to his wife, which expenses have amounted to Three Thousand Four Hundred Sixty-four and 05/100 ($3,464.05) Dollars, which your petitioner itemizes as follows:

| | |
|---|---:|
| Drs. Young and Young | $ 145.00 |
| Drs. Garrett and Garrett | 500.00 |
| Hendrick, Lloyd & Compant | 36.00 |
| Drs. Kerlin and Duncan | 25.00 |
| Highland Sanitarium | 460.15 |
| Schumpert Sanitarium | 165.50 |
| Roll Osborn & Sons (ambulance) | 3.00 |
| Margaret Place Pharmacy | 5.40 |
| Nursing | 1,274.00 |
| Dr. Fowler (dentist) | 400.00 |
| Mrs. Hamilton's clothes, hat, dress and coat | 75.00 |
| Value of wrecked car | 280.00 |
| Miscellaneous expenses | 100.00 |
| | $3,464.05" |

The testimony conclusively proves the injuries alleged, as well as the expense incurred by reason thereof, and the damage to plaintiff's car; and the amount of damages allowed by the lower court is not excessive. There has been no answer to the appeal, and neither plaintiff nor defendant has argued or briefed the question of the amount of damage.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.