No. 3811

Second Circuit

---

## SHIELDS v. SUCCESSION OF HODGE

---

(June 2, 1930. Opinion and Decree.)

---

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, attorneys for plaintiff, appellee.

Theus, Grisham, Davis & Leigh, of Monroe, attorneys for defendant, appellant.

ODOM, J. On May 4, 1929, between 8 and 9 o'clock p. m., plaintiff was driving her Ford coupe north on Fourth street in the city of West Monroe. At the same time, Wesley Hodge, Jr., the fifteen-year-old son of Dr. Hodge, was driving a Ford roadster west on Mill street. (The two streets intersect at right angles.) The two cars collided at the intersection. Plaintiff was injured and her companion in the car, Mrs. Bynum, was instantly killed. Plaintiff sued Dr. Hodge for damages. Dr. Hodge died before issue joined, and his widow qualified as administratrix of his succession, and the suit was prosecuted against the succession. Plaintiff alleged that the collision was due solely to the gross fault and negligence of young Hodge, driver of the Ford roadster.

The defense is contributory negligence. The trial in the district court resulted in

a judgment for plaintiff in the sum of $5,231, from which defendant appealed. Plaintiff moved to amend the judgment by increasing the amount.

The record in the case is quite voluminous, but, in the last analysis, the issues are determined by the physical facts and the testimony of the only witnesses present when the collision took place, to-wit, the plaintiff, who was driving her car, young Hodge, who was driving the roadster, and his companion in the car, Coates. Mrs. Bynum, who was in the car with plaintiff, was killed. Other persons who were near the scene heard, but did not see, the collision.

Neither Fourth nor Mill is a right of way street under ordinance or regulation of the city, nor were there warning or stop signs on either. Each is a prominent street and about the same width. The rights and obligations of these motorists at the intersection were therefore equal and mutual. It was the duty of each driver to proceed cautiously and to keep his car under control. This is conceded, but plaintiff, on the one hand, contends she was prudent and cautious and that young Hodge was grossly negligent, lost control of his car, and ran against her after she had entered the intersection; while, on the other hand, defendant contends that the accident was due to the joint negligence of the two.

That young Hodge was driving his car at an unlawful, excessive, and reckless rate of speed, and that, due to his excessive rate of speed, he lost control of it completely, is proved beyond question. He testified that he was running west on Mill street at about thirty-five miles an hour when he first saw plaintiff's car at the intersection, and his companion, Coates, said that he was running about thirty-five

or forty miles an hour. We doubt if either knows how fast the car was running. Young Hodge was asked:

"Q. You don't know how fast you were going except what you think about it?

"A. Just averaged it, just cut it open like that all the time everywhere I am going."

In other words, to use the language of the street, he "had it wide open." On his way to the intersection of Fourth and Mill streets, Hodge drove north on Cypress street at fifty-five to sixty miles an hour, according to Coates, and, according to Simpson, made a left turn into Mill street at about twenty miles, and that he appeared to speed up after turning into Mill. When he turned into Mill street, he was two blocks from Fourth street, and went across Third, which is between Cypress and Fourth, without stopping. He therefore had ample time in which to gain full speed. The physical facts clearly indicate that he was going at a high rate of speed when he first saw plaintiff's car enter the intersection. He says he applied his brakes the moment he saw the other car, or rather its lights, at the intersection. The brakes took effect, as shown by the fact that the wheels, or some of them skidded sixty-six feet by actual measurement. The application of the brakes retarded the speed some, of course, yet his car struck plaintiff's with such terrific force that plaintiff's car was knocked, not pushed or shoved, a distance of thirty-three feet over against a light pole at the northwest corner of the intersection and Mrs. Bynum was thrown fifty-eight feet west on Mill street. Coates and others say that the Hodge car hit the other one twice, the second time after it turned around and landed against the light pole.

That plaintiff's car reached the intersection first is likewise well established. The

collision took place at or near the manhole which is three feet eight inches north and three feet five inches east of the center of the intersection. The front end of the Hodge car ran against the right side of plaintiff's near the rear end. This indicates that plaintiff's car had, when struck, passed the center of the intersection by approximately its length. Both Hodge and Coates, his companion, say that plaintiff's car reached the intersection first. Coates was asked (page 144 of the record):

"Q. Who got to that intersection first, you or her?
"A. Mrs. Shields did.
"Q. She was there first?
"A. Yes, sir, she was there first."

Hodge gave the following testimony at page 328 of the record:

"Q. Where was Mrs. Shields' car with reference to the right or upper line of Mill Street when you first saw it?
"A. She was coming down about the center of the street I think.
"Q. Then when you first saw Mrs. Shields' car, it was in the center of Mill Street?
"A. From the lights it looked in the center.
"Q. Where was the bumper of her car then, in Mill Street?
"A. Yes, sir.
"Q. And that was the time when you applied your brakes?
"A. I applied my brakes just time I saw the lights flicker."

According to this testimony of Hodge, plaintiff's car was well within the intersection when he saw it, at which time he was more than sixty-six feet from it. It may be that this witness was somewhat confused when he gave the last-quoted testimony, for he was later asked:

"Q. What part of Mrs. Shields' car was in Mill Street when you applied your brakes?
"A. I don't believe she got quite to the intersection of Mill Street.

"Q. How far was she from the intersection?
"A. She must have been a pretty good ways."

This indicates that he did not know. But his testimony as a whole warrants the holding that he thought plaintiff's car was either in the intersection or very near to it when he first saw it—at any rate, much nearer to it than he was.

Plaintiff testified that, before reaching the intersection, she blew her horn, stopped, looked, did not see the Hodge car, then proceeded slowly, her car being in low gear when hit. Her testimony that she gave the horn signal is corroborated by that of Mrs. Julian Cobb, who lived at the second door on Fourth street from the intersection. She said she heard the horn signal and recognized it as plaintiff's, as it had a peculiar sound with which she was very familiar, and that she heard the crash immediately. Hodge admitted that he sounded no alarm before reaching the crossing. The testimony of plaintiff and of Mrs. Cobb that the horn signal was given, and of plaintiff that she stopped, looked, and proceeded slowly, is not contradicted, except by that of Hodge and Coates, who say they do not think she stopped, and who estimated her speed at approximately twenty miles an hour at the moment of the collision. They both stated that they could not be positive as to her speed, nor could they say definitely that she did not stop, as they saw nothing except her lights as they shone on the street. The Hodge car, as already stated, was proceeding at high speed, and must have been a considerable distance away when plaintiff reached the crossing and looked, which accounts for the fact that she did not see it.

As there was no municipal ordinance or regulation giving cars on either of these

intersecting streets the right of way, the plaintiff, having reached and entered the intersection first, had the right of way and was entitled to proceed. Such has been the uniform holding of the Courts of Appeal in this state. Johnston vs. Worley, 3 La. App. 675; Borrello vs. Rohrer, 4 La. App. 510; Smyth vs. Hill Stores, Inc., 8 La. App. 246; Marshall vs. Freeman, 10 La. App. 12, 120 So. 414.

In the 10th La. App. case cited supra, and in others, the Orleans Court held that the one entering the intersection first had the right to proceed, even though the car on another street had the right of way.

The rule is stated as follows in a case note found in 21 A. L. R. page 974:

"In the absence of a statute or ordinance regulating the matter, it is a general rule that the vehicle entering an intersection of streets first is entitled to the right of way, and it is the duty of the driver of another vehicle approaching the crossing to proceed with sufficient care to permit the exercise of such right without danger of collision." See supplement to this note in 37 A. L. R. page 494, and 47 A. L. R. page 595.

Hodge, the driver of the roadster, was proceeding at such high speed that he could not stop after seeing plaintiff enter the intersection. His negligence in that respect was the proximate, if not the sole, cause of the accident.

The mere fact that one vehicle has the right of way at an intersection does not absolve the driver of the car thus favored from the duty of using due care to avoid injury to others at the intersection.

Invoking the latter rule, counsel for defendant contend that plaintiff did not use due care and plead contributory negligence in bar of plaintiff's action. Contributory negligence in actions of this kind bars recovery. But when that defense is set up, the burden rests upon defendant to sustain it. Buechner et ux vs. City of New Orleans, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455, and authorities there cited; Lemoine vs. City of Alexandria, 151 La. 562, 92 So. 58; Lipscomb vs. Standard Highway Co., 11 La. App. 508, 124 So. 156.

The negligence attributed to plaintiff is that she herself was speeding. As tending to prove that she was, defendant called six witnesses, each of whom swore that he had gone to the scene, either that night or the next day, and some on both occasions, and that there were skid marks on Fourth street just south of the intersection, extending back fifty or sixty feet, and some of them said that they extended into the intersection to the spot where the collision took place.

It is shown that an ambulance was carried that night to this intersection over Fourth street, the one over which plaintiff went, and that it made skid marks for some fifty feet just south of the intersection. But defendant's witnesses testified that they saw the skid marks of the ambulance and of another car also. This testimony was introduced to support the theory that plaintiff tried, but failed, to stop the car. This testimony, if uncontradicted, would strongly corroborate defendant's contention that plaintiff was speeding. But plaintiff produced exactly the same number of witnesses who swore positively that there were no skid marks on Fourth street, except those made by the ambulance. Hammons and Cummings, police officers of the city, testified that, in line with what they conceived to be their duty as officers, they went to the scene that night immediately following the accident, and, in order to ascertain, if pos-

sible, who was responsible for the collision, viewed the surroundings, and especially the streets, looked carefully for skid marks on Fourth street, using a flashlight; that they went back early the next morning for the same purpose; that they looked critically; and that none were there, except those made by the ambulance.

Mr. Wright, the probation officer, who had taken the minor, Hodge, into custody at the request of his father, went to the scene the next morning for the same purpose. He testified that there were no skid marks on the street, except those made by the ambulance. Plaintiff's other three witnesses were equally positive. The witnesses for the respective sides are, so far as we know, of equal credibility. On this point, therefore, there is no preponderance of evidence in favor of either side.

Defendant introduced Jesse Cobb, Mose Bayles, Ed Anders, and Mr. Henry, whose testimony indicates that plaintiff was running between twenty-five and thirty miles an hour when she was some distance south of the Mill street intersection. Cobb and Bayles were in a Ford going north on the same street, as was Anders, in a Chevrolet. They say plaintiff passed them going twenty-five or thirty miles. Mr. Henry saw plaintiff turn from Natchitoches into Fourth street at a rapid rate. But none of these witnesses could say that plaintiff maintained that speed up to or into the crossing. They did not notice her car after it passed them at least a block and more south of where the collision took place.

As against all this, there is the testimony of plaintiff that she was not speeding, and that she stopped before entering the intersection.

Defendant failed to discharge the burden of sustaining her plea of contributory negligence.

By ordinance of West Monroe, it is made unlawful for any person to operate a motor vehicle on any of the streets at a speed exceeding fifteen miles an hour. Plaintiff admitted that she was proceeding up Fourth street, before reaching the crossing, at twenty miles, in violation of the ordinance. Hodge and Coates estimated her speed at twenty miles while in the intersection and at the moment of the collision.

The testimony as a whole does not warrant the holding that plaintiff was exceeding the speed limit at the time of the collision. But even if it be conceded that she was, and, therefore, guilty of negligence in that respect, it does not necessarily follow that, as a matter of law, she cannot recover. Counsel in their brief say that contributory negligence defeats recovery, even though the negligent act consisted in the violation of a statute or ordinance. That is true, of course, if plaintiff's negligence in that respect contributed to the accident and injury as the proximate cause thereof. Contributory negligence defeats recovery in cases of this kind. But a plaintiff may be guilty of negligence and still recover, because a negligent act may not amount to "contributory negligence" in its legal sense, and it is only "contributory negligence" in its legal sense which defeats recovery.

"Contributory negligence in its legal significance is such an act or omission on the part of plaintiff, amounting to an ordinary want of care, as concurring with the negligent act of defendant is the proximate cause or occasion of the injury complained of." 29 Cyc. p. 505; 28 Cyc. p. 38.

"The mere collateral wrongdoing of the

injured person cannot of itself defeat the right of recovery for the injury if it did not proximately contribute thereto, and, although one injured in an automobile accident may have been guilty of negligence, yet, if his negligence did not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar recovery."

Blashfield's Encyclopaedia of Automobile Law (1927) vol. 2, p. 1209. See, also, Words and Phrases, First, Second and Third Series, Contributory Negligence.

The negligence of plaintiff, to bar recovery, must have in it the element of proximate cause. None such is shown here. Defendant is liable.

## AS TO QUANTUM OF DAMAGE

At the time she was injured, plaintiff was twenty-five years old, in good health and was earning $220 per month. She was in a sanitarium one month, was confined to her bed at home for seven weeks additional, and during the time suffered. She was shocked and had contusions and lacerations about the body, a fracture of four transverse processes of the vertebrae, a fracture of the sacrum, "a fracture of the ischium, a portion of the pelvic bones." She has some difficulty in walking, one leg being slightly shorter than the other. There is no evidence that her earning capacity has been reduced. The physicians testified that she is now incapable of giving normal birth to a child. We do not consider that. She was once married and had no children and was separated from her husband at the time of the accident. Her expenses were something over $1,000. The court allowed her $5,231. We approve the allowance.

For the reasons assigned, the judgment is affirmed, with costs.