ROBICHAUX v. DORION

(May 25, 1931. Opinion and Decree.)
(June 8, 1931. Rehearing Refused.)
(July 17, 1931. Writs of Certiorari and
Review Refused by Supreme Court.)

H. W. Robinson and F. B. Freeland, of New Orleans, attorneys for plaintiff, appellee.

Guion & Upton and Thomas Gilmore, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Plaintiff claims damages from defendant for personal injuries said to have resulted from being knocked down by defendant's automobile at the intersection of Milan and Magazine streets, this city, on July 21, 1929, at 10:30 a. m.

The petition alleges that defendant was operating his car at a high and dangerous rate of speed; that plaintiff was past the middle of the street when struck; that, although plaintiff had the right of way under the traffic ordinance, defendant failed to recognize it; and that plaintiff was in plain view, and defendant could have avoided running into him had his car been under proper control and had he been keeping a proper lookout.

Defendant answered, admitting the accident, but denying that he was at fault; averring that plaintiff was guilty of contributory negligence, and "that the said plaintiff walked into the automobile of respondent."

The trial court found that plaintiff was guilty of negligence in failing to look in the direction in which defendant's car was coming, but that defendant had the last clear chance of avoiding the accident, and rendered judgment in favor of plaintiff in the sum of $1,000. Defendant has appealed.

The evidence shows that on the morning in question plaintiff, who was sixty-seven years of age, was walking on the uptown sidewalk of Milan street in the direction

of the lake. As he reached the corner of Magazine street, he proceeded across the intersection, and had reached a point slightly past the middle of the street when defendant's automobile, which was proceeding down Magazine street, struck him and knocked him down, fracturing both bones of the left leg about 4 inches below the knee. He was taken to the Charity Hospital for treatment.

Magazine street is a two-way street, with double street car tracks thereon. The tracks on the lake side are used by street cars moving uptown and the tracks on the river side are used by street cars going downtown. It is agreed by both parties that the width of the river sidewalk of Magazine street, at the intersection of Milan street, is 11 feet 10 inches; that the distance from the curb of the river sidewalk of Magazine street to the first rail of the downtown tracks is 10 feet 3 inches; and that the width of the car track is 5 feet 1 inch. It is estimated that the distance between the two sets of tracks is about 5 feet.

The evidence of both defendant and plaintiff clearly establish that plaintiff had reached a point near the river rail of the uptown tracks or slightly past the middle of Magazine street at the time that defendant's automobile struck him.

While plaintiff says he looked up and down Magazine street before attempting to cross it, and did not see any automobiles close enough to interfere with his crossing, it is apparent that plaintiff either did not look or, if he did look, he did not do so carefully. To look and not see is just the same as not looking at all. We find, as did our learned brother below, that he was guilty of negligence in going out into the street without having properly and carefully looked before doing so.

But, notwithstanding the fact that plaintiff was guilty of negligence, defendant will still be liable under the doctrine known as last clear chance, in the event, after seeing plaintiff's perilous position, he failed to stop his car or to swerve it so as not to strike the plaintiff, if he had an opportunity to do so.

Defendant contends that he did not have an opportunity of avoiding the accident, because there was a parked automobile 15 feet, several inches from the gutter curb on the uptown river corner, and that plaintiff suddenly stepped from in front of the parked car into the path of his automobile, that he had been running about 20 miles per hour, but had slowed down to about 10 or 12 miles per hour, and that immediately upon seeing plaintiff, who continued to walk across the intersection looking in a downtown direction, he applied his brakes, and swerved sharply to the left, causing his car to come into collision with one of the several cars which were going uptown.

Defendant on cross-examination testified as follows:

"Q. On what spot in that intersection was Mr. Robichaux when he was struck?
"A. Well, he was past the track on the river side, maybe just exactly between the two tracks, about ten feet, in the middle of Magazine Street, ten feet below the sidewalk line of Milan Street.
"Q. We understand each other perfectly about that, Mr. Robichaux was between the two car tracks, actually in the center of the street and about ten feet below the curb line of the Milan St. sidewalk?
"A. Yes, sir.
"Q. When you were going twelve miles an hour, you could stop your car in about seven or eight or ten feet, could you not?
"A. Cars should be able to stop in that distance, I understand.
"Q. Could not you have done that?
"A. I guess I could have done it.

"Q. You are familiar with driving cars and had good brakes, and could have stopped your car in ten feet?

"A. About.

"Q. And twelve miles an hour is going very slow?

"A. Very slow.

"Q. It is going with the car thoroughly under control, is it not?

"A. Supposed to be; yes, sir."

He further testified that he saw plaintiff when he was 12 feet away from him, as he came from behind the parked car.

Defendant's witnesses corroborated him to the effect that he was going only about 10 miles per hour, and could have stopped almost immediately, and that he saw plaintiff when he was 12 feet in front of the car.

The evidence is undisputed that plaintiff was sixty-seven years of age and was walking across the intersection at the time he was struck. Conceding that the parked automobile interfered with the view of defendant, there can be no doubt that, after plaintiff passed from in front of the parked car into the street, he was plainly in view, and defendant saw him or should have seen him.

Plaintiff from the time he emerged from behind the parked car, walked a distance of 12 feet, as established by the evidence of both sides. During the time that he walked this distance, defendant's car must necessarily have traveled, at the very least, twice as far. Defendant states that he was going 10 or 12 miles per hour, had good brakes on his car, and could stop within 12 feet. He admits that he saw the plaintiff when he first came from in front of the parked car. Since plaintiff actually walked 12 feet from the time he emerged from the side of the parked automobile until he was struck, surely and certainly the automobile traveled a greater distance, and had more than 12 feet within which to stop. The fact that plaintiff was looking downtown would indicate to any prudent or careful driver that he was unaware of the approaching car. We believe under the circumstances defendant, after seeing that plaintiff was in imminent danger, had an opportunity of avoiding the accident by stopping his car, which he failed to do. It also appears to us that defendant could likewise have avoided the accident by slightly turning to the right instead of the left, in which event he would have passed to the rear of the plaintiff. We have come to the same conclusion as our learned brother below that defendant is liable. Lanphier v. D'Antoni, 14 La. App. 441, 131 So. 628; Fontaine v. Dorsey, 15 La. App. 282, 131 So. 506; Gauvereau v. Checker Cab Co., 14 La. App. 448, 131 So. 590; Gouzien v. Feraci, 2 La. App. 115; Da Ponte v. Uzzo, 5 La. App. 105; Shields v. Fairchild, 130 La. 648, 58 So. 497; Mequet v. Algiers, 147 La. 364, 84 So. 904; Duffy v. Hickey, 151 La. 274, 91 So. 733; Fernandez v. Montz, 151 La. 299, 91 So. 742; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194.

As to the quantum of damages, we first observe that plaintiff only claims damages for pain and suffering for his personal injuries. The court allowed him the sum of $1,000. The record shows that he was knocked down and rendered unconscious; that both bones in his left leg were broken about 4 or 5 inches below the knee; that he was confined to the hospital for three weeks, where his leg was first placed in splints and later in a plaster cast, which remained on him for eight weeks; that he was required, after leaving the hospital, to return there twice a week for treatment; that he could not walk without a crutch and stick for four months after the accident; that he suffered intense pain; and

that his disability was for about four months. We gather that it was a clean fracture, with no comminution or breaking of the tissues, and that the bones were set in proper apposition, leaving no permanent injuries.

Plaintiff has answered the appeal, and asks for an increase in the award, and defendant contends that the amount awarded is excessive. It is our opinion that $1,000 is fair and reasonable and in line with former awards of this court.

For the reasons assigned, the judgment appealed from is affirmed.

JANVIER, J. (dissenting). The facts of this case are somewhat in dispute, but, accepting plaintiff's statement as true, I cannot escape the conviction that his own negligence was responsible for the accident, and that this is nothing more nor less than an ordinary pedestrian crossing case in which the pedestrian failed to exercise his senses of sight and hearing; and, in passing, let me remark that the record shows that the pedestrian in this case had defective hearing.

Plaintiff says that he walked out into the street and did not see the automobile coming. That it was coming is evidenced by the fact that the collision occurred, and that the speed was moderate is not in dispute. His only reason, then, for not seeing, was that he did not look. Whether he was struck when in the middle of the street, or just prior to reaching the middle, or when just beyond that point, is of no great importance, though on this question his own testimony should be given great weight. He says that "he was pretty near in the middle of the street." I take this to mean that he had not quite reached the middle. That defendant's automobile was on the river side of the street,

that is, the side from which plaintiff emerged, is also testified to by Mr. Fabacher, plaintiff's principal witness, who, on this point, says that at the time the defendant's automobile struck Mr. Robichaux it was "on the river side."

If, as plaintiff claims, there was another automobile between himself and the car which struck him, then he was negligent in crossing in front of that other car without making certain that on the other side there was no danger, because he should have borne in mind that any driver of another car on the other side could not see him any better than he could see the other car. Therefore, whether there was a car between him and the car into which he walked is of no importance, since in either event it was his negligence which was primarily responsible for the accident, and in either event his own negligence in not looking continued with each succeeding step, and this continuing negligence prevented the application of the doctrine of the last clear chance, since there was no time at which it can be said that it was no longer possible for him to have saved himself by the exercise of care. When defendant discovered the peril of plaintiff and turned to the left to avoid him, if plaintiff had been on his guard, he also would have discovered defendant, and could have stopped or stepped back and avoided the accident. The doctrine of the last clear chance applies only when the injured party no longer has it in his power to avoid the final result. After the ability to save himself no longer exists, then, if the other party can avert the accident, and fails to do so, he is liable under the doctrine referred to. It has been many times said that the doctrine of the last clear chance, which is a so-called exception to the rule of contributory negligence, "will not be extended to cases where the plain-

tiff's own negligence extended up to and actually contributed to the injury. To warrant its application there must have been some new breach of duty on the part of the defendant subsequent to the plaintiff's negligence." Jarrow v. City of New Orleans, 168 La. 992, 123 So. 651, 652. See, also, Castile v. O'Keefe, 138 La. 479, 70 So. 481; Harrison v. La. Western R. Co., 132 La. 761, 61 So. 782; American & English Encyclopedia of Law, (Supp.) vol. 2, p. 64, notes 4 and 5.

I therefore respectfully dissent.