## HARLOW v. OWNERS' AUTOMOBILE INS. CO. OF NEW ORLEANS et al. *
### No. 5012.

Court of Appeal of Louisiana.
Second Circuit.
April 1, 1935.

*Rehearing denied May 2, 1935.

Hugh M. Wilkinson and A. Miles Coe, both of New Orleans, and Chas. L. Mayer, of Shreveport, for appellants.

Harry V. Booth, of Shreveport, for appellee.

TALIAFERRO, Judge.

We find in the record before us written reasons of the trial court for the judgment rendered for plaintiff, wherein the issues, facts, and legal principles involved in the case are clearly stated. After a careful study of the case, we have reached the same conclusions on the issues involved as did the learned trial judge, and have decided to adopt the reasons assigned by him for judgment as our own, adding thereto such further comments as we deem pertinent.

"Mrs. Mattie H. Harlow brings this suit against the Service Cab Company and its insurer, the Owners' Automobile Insurance Company of New Orleans, for damages for personal injuries resulting from an automobile accident which occurred on or about December 30, 1933, near the intersection of Fetzer avenue and Portland avenue, in the city of Shreveport.

"Portions of the testimony were conflicting, but the court gleans the following facts from the record:

"The day was a rainy Saturday morning, and the time about 11 o'clock, when Mrs. Harlow, whose home is on Mabel street, not far from the intersection in question, having purchased a few groceries at the Piggly-Wiggly store on Portland avenue, came to the curb in the vicinity of where the 'white lines' now are marking the path for pedestrians across Fetzer avenue, and, raising her parasol, looked up and down the street, and seeing no approaching car, started across. Upon reaching a point near the opposite side of the street, she found mud and water, which she made an effort to avoid by turning east in Fetzer avenue and by walking several steps in that direction, when she was struck from behind and precipitated to the street.

"J. H. Maness, the driver of the taxicab for the Service Cab Company, had entered Fetzer avenue at a point west of Portland avenue, and was traveling in an easterly direction. The intersection of Portland with Fetzer at the point where the accident occurred is some distance from the intersection of that portion of Portland avenue which goes from Fetzer in a northerly direction; that being an intersection where the street car lines come into Fetzer avenue. At this point the cab stopped, awaiting a street car, and then proceeded on its way at a reasonable rate of speed. As it passed the pharmacy a few doors west of the grocery store, whence Mrs. Harlow had just come, some one hailed the driver of the cab, diverting his attention for a moment, and one of the passengers, seeing Mrs. Harlow in the street, gave warning to the driver, who immediately gave his attention to the space in front of him and applied his brakes. His wheels skidded on the wet pavement, and the cab came to a stop almost the instant it struck Mrs. Harlow. The driver offered to take Mrs. Harlow to the hospital, but she asked to be taken home instead, and this was done.

"She later suffered a 'procidentia' as a result of the blow, for which she was operated upon, and has never regained the same hardy strength which she had before, nor her former weight, though the operation was a success.

"There are two points of fact in which there is serious dispute. The first is as to a person on the sidewalk diverting the attention of the driver just before the accident. The driver of the cab testified that he did not remember such diversion of his attention, but, on the contrary, stated that he kept a lookout and proceeded to stop as soon as he saw Mrs. Harlow. Some of the witnesses for the defendant, however, testified to the fact that some one whistled or called to him from the sidewalk, and that a passenger warned him of the danger to Mrs. Harlow, and we find such to be a fact. An objection was made that this testimony came out in rebuttal and should have been brought out in chief. However that may be, the circumstances of the entire case convinced the court that at least the driver was not maintaining the lookout, which duty the law would impose upon him.

"The other point of fact that has a bearing on the case, but which is in dispute, is the question of whether or not Mrs. Harlow was proceeding across Fetzer avenue in the usual path of pedestrians, or whether she was crossing the street at an angle and at a distance from the usual path of pedestrians.

"We believe that the preponderance of the testimony shows that at least she com-

menced her path across the street at approximately the usual point that pedestrians would cross, though at that time the path was not marked by white lines. As a matter of law, this imposes upon the driver of the cab the obligation to maintain a very careful lookout, and to exercise great care with reference to pedestrians.

"After Mrs. Harlow turned and proceeded east down the street, it appears to us that, normally, this would change the legal obligation of the parties and place a greater burden on her and a less burden on the driver of the taxicab. However, in this instance, the necessity of making the turn and proceeding down the street arose after she had crossed the greater part of the street, for it was only then that she was confronted with the obstacle of mud and water in her path. The fact that it seems certain that after making this turn she proceeded a number of steps before the accident, convinces the court that the driver of the taxicab should have seen her, not only because she had crossed the street, but had gone a number of steps in a perpendicular direction and, in a direction the same as that in which the taxicab was traveling. If the driver of the taxicab had been keeping the proper lookout, he had ample opportunity to see her and to avoid the accident.

"The only theory of the defendant, upon which this argument is based, is that the accident could have been avoided, and would have been avoided if she had not suddenly stepped from behind parked automobiles. The evidence is also conflicting as to whether cars were parked on the street; but, in view of the other circumstances, we do not find it necessary to determine that fact.

"The plaintiff bases her case on a theory of the doctrine of last clear chance, which, of course, presupposes both the negligence of the defendant and negligence on the part of the plaintiff. The negligence of the defendant was in not keeping a proper lookout, and the negligence of the plaintiff was in her proceeding down the street in front of the approaching taxicab, without looking for the approaching automobile.

"It seems undoubtedly true from the testimony that, had she not turned to go east, in the street, but had proceeded across the street, she would not have been struck, because the several steps that she took east would have taken her to the curb. Therefore her only negligence could have been in turning her back to the approaching car to proceed in the easterly direction, without looking west when she turned.

"The theory of the defendant as to the doctrine of 'last clear chance' is that its applicability is destroyed by the continuing negligence of the plaintiff up to the time of the accident.

"The cases which defendant has cited undoubtedly establish the legal principle that, if the negligence of the plaintiff continued up to the time of the accident, and that negligence is the proximate cause of the accident, or a proximate cause of the accident, the doctrine does not apply, and plaintiff could not recover.

"We are, however, of the opinion that the theory does not apply to cases of pedestrians in the street being run down by automobiles, even in the instance of a pedestrian placing himself in danger by crossing at an unusual place in the street and when the driver has the last clear chance or the opportunity to avoid the accident.

"The case of Bass v. Means, 12 La. App. 260, 124 So. 553, in which a pedestrian was barred from recovery, differs from the case at bar in that the negligent act of stepping in front of the car was almost simultaneous with the negligent act of the defendant, and that under those circumstances the defendant did not have the opportunity of avoiding the accident. Therefore the doctrine of last clear chance did not apply.

"The case of Robichaux v. Dorion, 17 La. App. 159, 134 So. 784, and the case of Loewenberg v. Fidelity Union Casualty Company (La. App.) 147 So. 81, 87, are pedestrian cases where the pedestrian had placed himself in danger, but where the defendant had an opportunity of avoiding the accident, of which he did not avail himself, and we believe these cases are applicable to the case at bar.

"In other words, the fact that Mrs. Harlow had proceeded some distance across the street, and had then turned and walked down the street a number of steps and then had been struck from behind by the taxicab, the approach of which she was not aware, and her back being to the cab, could not well have been aware, convinces the court that the taxicab driver should have seen her in the street and should have realized her danger, and he did have the last opportunity to avoid the accident. It was his negligence that was the proximate cause of the accident.

"As to the quantum of damages, we find that Mrs. Harlow is a woman of 59 years

of age, who has had children, which had thereby made her susceptible to the 'procidentia' which the accident precipitated. We find that she suffered the usual pain attendant upon a major operation, and that she does not have the same robust strength that she had prior to the occurrence.

"Taking into account her age and the fact that the operation was a success, we feel that an allowance of $1,000 for pain and suffering is proper, and that her hospital and doctors bills should likewise be paid; and we also find that she proved the damage to her earning capacity in the sum alleged in the amended petition, which was $25.

"Judgment is therefore rendered in favor of the plaintiff in the total sum of $1278.95.

"Cecil Morgan,
"District Judge."

Plaintiff was negligent in walking down the street without keeping a lookout for cars behind her which had the right to travel on the same side of the street she was on and in same direction, but her negligence in this respect was in a sense passive, and certainly was not the, or a, proximate cause of her being run down and injured. She was in plain view of all vehicles approaching her from both directions.

Defendant's driver states that, when he first saw plaintiff, his car was 15 feet from her. He was going 15 miles per hour, or 22 feet per second. The brakes were applied, the car skidded on the slippery pavement, and stopped with its impact against plaintiff. It did not pass over her body to any extent. It therefore follows that, had this driver discovered plaintiff's presence ahead of him one-half second before he did, the car would have stopped before striking her. The testimony is convincing that he applied the brakes only after his attention was called by one of his passengers to plaintiff's presence ahead of him, and that this passenger saw plaintiff before the driver did and holloed at him at the time he was giving attention to the person on the sidewalk who had whistled or called to him. Undoubtedly an appreciable lapse of time was consumed by the driver while he had his head turned to his rear, or at angles to his left, in the effort to locate and answer the person who had signalled him from the sidewalk. This inattention to duty, the failure for a moment or two to keep a close watch ahead, constituted the proximate cause of the accident, and renders the employer and its insurer responsible for the damages resulting therefrom. It is true plaintiff's negligence continued to the moment of the accident, but it was not a proximate cause of it. The case of Shields v. Succ'n of Hodge, 13 La. App. 546, 128 So. 530, is in point.

We think, as did the lower court, that the doctrine of the last clear chance finds peculiar application to the facts of the case. It is true the driver did not observe plaintiff in the street in time to avert running into her, but, had he been the alert driver he should have been, he would have seen her in time to have avoided the accident. It was his duty to have seen her in time to avoid hitting her. It is no defense to the case that he acted promptly and did everything in his power to prevent hitting her as soon as his attention was directed to her presence before him. The last clear chance doctrine was recognized and applied in the Loewenberg Case, cited in the lower court's opinion. That case is decisive of the present case. We there said: "Defendant contends that, in applying the doctrine of last clear chance, we should require plaintiff, in order to recover, to prove that Sanders Fowler, Jr., after seeing the danger, could have avoided the injury. This seems to be the accepted rule in some jurisdictions, but the rule in Louisiana is that, if defendant did not see the danger, but by the exercise of ordinary care could have seen the danger in time to avoid the injury, the doctrine of last clear chance will apply."

This holding is abundantly supported by the numerous cases therein cited.

Plaintiff suffered considerable pain from the accident, and was finally forced to spend several days in a sanitarium, after undergoing operation for the "procidentia." To accomplish this operation, she was placed under the influence of total anæsthetic. Before the injury she was robust, strong, and vigorous for one of her years. No doctor had attended her for over a quarter of a century. Her weight decreased about twenty pounds, and at time of trial the surgeon who performed the operation on her was of the opinion it would be several months before recovery from the ill effects of the accident and operation. In view of these facts and conditions, we think the award of damages to her inadequate. It should be increased by $500.

For the reasons assigned, the judgment appealed from is increased to $1,778.95, and, as thus amended, it is affirmed, with costs.