**TAYLOR et al. v. VICTORIA NAV. CO. et al. ***

No. 16416.

Court of Appeal of Louisiana.   Orleans.
Oct. 18, 1937.

*Rehearing denied Nov. 2, 1937.

**520**

Adam H. Harper and Alexander C. Granzin, both of New Orleans, for appellants.

Oliver S. Livaudais, of New Orleans, for appellees Victoria Nav. Co. and Peter and Leopold Taliancich.

Prowell & McBride, of New Orleans, for appellee John Merinovich.

McCALEB, Judge.

The parents of Joseph Taylor, a colored boy, 8 years of age, brought this suit seeking to recover damages for injuries suffered by him resulting from being knocked down by a truck while walking on the public highway in Plaquemines parish.

The defendants in the case are the Victoria Navigation Company, a commercial copartnership composed of Peter Taliancich, Leopold Taliancich, and John Merinovich, the alleged owner of the truck involved in the accident, and Peter Talian-cich, Leopold Taliancich, and John Merinovich individually and in solido as members of the copartnership.

The accident is alleged to have happened on January 9, 1934, at 7:30 p. m., at which time the plaintiffs' child, accompanied by his mother, was walking on State Highway No. 31 in the direction of New Orleans at a point between Buras and Venice, La. While so doing, he was run into from the rear by a heavy freight truck, which is alleged to have been the property of the defendant copartnership and operated by its employee acting within the scope of his employment.

Specific charges of negligence are made by plaintiffs respecting the speed of the truck and the failure of its driver to exercise a proper lookout and have the vehicle under control. The injuries to the child consisted of a broken leg, for which the plaintiffs pray for damages in the sum of $5,000.

The defendants, Victoria Navigation Company, Peter Taliancich, and Leopold Taliancich appeared in due course and filed exceptions to the petition, which were overruled. Thereafter, they filed a joint answer denying generally each and every allegation of the petition.

The defendant John Merinovich also appeared and filed exceptions to plaintiffs' petition, and later answered denying responsibility for the accident. This defendant also set forth that since the happening of the accident he had sold his interest in the Victoria Navigation Company to the defendant Peter Taliancich, by written instrument, and that by the act of sale Peter Taliancich assumed and obligated himself to pay all of the debts and liabilities, if any, that might be due by the Victoria Navigation Company and the Launch Victoria. John Merinovich also alleged alternatively that, should the court hold that the claim of plaintiffs against the Victoria Navigation Company in valid and actionable, then in that event he should have whatever judgment for whichever might be the case, against the defendant Peter Taliancich.

Evidence was heard on these issues, and the district judge, being of the opinion that the plaintiffs had failed to prove their case, dismissed the suit. From the adverse judgment, this appeal has been prosecuted.

The plaintiffs assert in this court that they have made out a prima facie case, and that the district judge erred in dis-

missing their suit. Contra, the defendants maintain that the plaintiffs have utterly failed to prove either that the Victoria Navigation Company was the owner of the truck involved in the accident, or that it was driven by its employee acting in furtherance of its business. In view of the contentions made, it becomes necessary to examine the evidence submitted at the trial below in order to determine the correctness of the result reached by the district judge.

It is conceded that the Victoria Navigation Company is a commercial copartnership, and that, at the time of the accident, Peter and Leopold Taliancich and John Merinovich were the partners composing it. This firm owned and operated the Launch Victoria, and was engaged in the business of freighting cargo between New Orleans and points on the lower coast in Plaquemines parish. A large portion of the freight transported by the Victoria consisted of oranges, which are grown in Plaquemines parish and shipped to New Orleans for distribution and sale by produce merchants.

The copartnership conducts it business from New Orleans, and the defendants Peter and Leopold Taliancich are also domiciled in Orleans parish. John Merinovich, the other partner, lives in the parish of Plaquemines, where the accident occurred.

The procedure adopted by the Victoria Navigation Company, in the transportation of oranges shipped by the orange growers from Plaquemines parish to New Orleans, is as follows:

The Victoria leaves New Orleans each Tuesday in the morning and arrives at Burwood at 10 or 11 o'clock that night. All persons desiring to ship oranges to New Orleans place a white flag in front of their property and a truck driven by either Tony or Peter Merinovich, the two sons of the defendant John Merinovich, stop at the consignors' property, load the oranges upon the truck, and transport them to the Launch Victoria at its dock in Burwood. No freighting charge is paid by the consignors of the oranges to Peter or Tony Merinovich for the service rendered by them in transporting the oranges to the Launch Victoria, but the Victoria Navigation Company collects from these consignors the total freight bill, which includes drayage and shipment to New Orleans.

This case was first set down for hearing below on May 2, 1935. At that time, the court heard the evidence of Peter Taliancich, who was called by counsel for plaintiffs for cross-examination, Joseph Taylor, the injured boy, Alma Taylor, his mother, Sophie Fountain, his aunt, and Avro Thompson, his cousin. At the conclusion of the statements of these witnesses, counsel for plaintiffs requested an opportunity to make further investigation, and the court granted a continuance in the matter.

The evidence taken at the first hearing on behalf of plaintiffs exhibits the following facts:

On January 9, 1934, at about 7:30 p. m., Avro Thompson, Joseph Taylor, and Alma Taylor, Joseph's mother, were walking in the direction of New Orleans on the right-hand side of highway No. 31 in Plaquemines parish. A few minutes before the accident occurred, they passed by a place designated by plaintiffs' witnesses as Paul Morgan's property. At that time, Alma Taylor and Avro Thompson noticed a truck stopped in front of Morgan's property, "which was picking up freight." They continued up the road a distance of 50 to 100 feet, walking in single file; Avro Thompson in front, Joseph Taylor next, and Alma Taylor in the rear. While they were thus positioned, the truck, which had been loading freight at Paul Morgan's place, sped past Alma Taylor and ran into Joseph Taylor, knocking him down and breaking his leg. The truck did not stop after it struck the boy, but continued on. While Alma Taylor is unable to describe the truck in detail, she positively identifies its driver as being Peter Merinovich, one of the sons of defendant John Merinovich. She also testifies that, in addition to Peter Merinovich, the truck contained two negro helpers riding in the back thereof, whose identity is unknown to her. She further says that the truck was loaded with oranges and that she knows that this truck was engaged in the business of hauling oranges to the Launch Victoria for shipment to New Orleans. Her statement is corroborated by Avro Thompson, who was also an eyewitness to the accident.

The plaintiffs, after the first hearing, and in an attempt to connect the defendants with the accident, sought to take depositions in Plaquemines parish of defendant John Merinovich and his sons, Peter Merinovich, the alleged driver of

the truck, and Tony Merinovich, who drove the truck on other occasions for the Victoria Navigation Company. The subpœnas were not served upon the Merinovich boys, and they did not appear at the time the depositions were taken. However, John Merinovich did appear, and he testified, in substance, that his sons, Peter and Tony, had worked on the Victoria for some time; that they did not own a truck; that they did drive a truck and transport oranges, but he does not know for whom the truck was driven. This man's testimony is far from impressive, and the tenor of his answers to questions propounded to him is such as to lead us to believe that he withheld as much information as possible respecting the arrangement existing between the Victoria Navigation Company and his sons at the time of the accident.

At the same time the deposition of John Merinovich was taken, evidence was also given by one Neil Patton, a resident of Plaquemines parish, who appears to be a disinterested witness in the case. Mr. Patton testified to many things which are hearsay and which we have refrained from considering, but he did state that, as a matter of fact, he was well acquainted with the Merinovich boys and knew that they drove a green Ford truck for the Launch Victoria, which was used for the purpose of hauling oranges to the boat during the time that the accident occurred.

After the taking of the depositions of John Merinovich and Neil Patton, the case was again set down for hearing before the district judge, and further evidence introduced. This evidence for the most part consists of statements made by Peter Taliancich, one of the defendants, testifying under cross-examination. This witness's testimony consists of many pages in the transcript, and is replete with inconsistencies and contradictions.

After carefully analyzing his statement concerning the employment of the Merinovich boys and their operation of the truck for account of the Victoria Navigation Company, we find the substance of his evidence to be as follows:

The major portion of the freight hauled by the launch Victoria, during the period of time when the accident occurred, was oranges. It was necessary, in order for the Victoria to carry the oranges to New Orleans from Plaquemines parish, that vehicles be used to deliver them to the point where the boat was docked. For this purpose, a truck, which Taliancich denies was ever owned by the copartnership, was used, and the Merinovich boys, Peter and Tony, were interchangeably employed in operating it. He states that Peter and Tony Merinovich sometimes worked on the boat and sometimes worked on the truck. He further says that when these boys hauled oranges in the truck, the navigation company paid them $1 for each truckload delivered by them to the boat; that the truck operated throughout the orange growing section of Plaquemines parish; that the orange growers, who wished to ship their oranges by water on the Victoria, would place a white flag in front of their property, and that the truck would pick up their oranges and transport them to the boat.

In spite of his denial that the truck used by the Merinovich boys to transport the oranges was the property of the copartnership, Taliancich states that after the month of October, 1934, when he purchased John Merinovich's interest in the copartnership, he bought a truck from the Bohn Motor Company of New Orleans; that this new truck is now driven by one Riley, and that it is being used for the same purpose (carrying oranges to the Victoria) as the truck involved in the accident. It is significant to note that this new truck was partially paid for by trade of an old Ford truck, although the witness had previously denied that the copartnership owned a Ford truck. He also contradicts the testimony of John Merinovich, who stated in his deposition that his sons, Peter and Tony, worked for the Victoria, and that Peter Merinovich was earning a salary of $60 per month. When asked, under cross-examination, what was the color of the Merinovich boys' truck, Taliancich replied that he did not know the color of it, and added: "Whatever he haul; I never choose to look at the color of the truck."

On the whole, the testimony of this defendant is most unsatisfactory and we are convinced that he, like John Merinovich, did not make a frank statement, but deliberately attempted to conceal information within his knowledge concerning the employment of Peter and Tony Merinovich and their use of the truck involved in the accident.

On the foregoing evidence, we are confronted with the problem of determining whether the plaintiffs have made out a

prima facie case against the defendants in suit. We have no hesitancy in finding that the child was struck by a truck which was hauling oranges, and that this truck was driven by Peter Merinovich.

The evidence, as to the ownership of the truck by the defendant copartnership, is too uncertain for us to hold the defendants on that score, although we entertain a strong suspicion that such was the case, notwithstanding the abject denials of Peter Taliancich and John Merinovich. On the other hand, we are convinced that the plaintiffs have made out a prima facie case of employment by the copartnership of the Merinovich boys to operate the truck involved for the copartnership's account, and that Peter Merinovich, at the time of the accident, was engaged in pursuance of the firm's business.

Counsel for the defendants persist, however, that Peter Merinovich was an independent contractor, because Peter Taliancich stated that the Merinovich boys were paid $1 per load for oranges brought to the Launch Victoria, and that the partnership exercised no supervision or control over the movements of the truck.

We are unable to coincide with this conclusion. The plaintiffs, by showing that the truck was driven by Peter Merinovich and by proving that he was engaged in performing services for the benefit of the Victoria Navigation Company, made out a prima facie case for the invocation of the rule of respondeat superior. The defendants' answer is, in effect, a general denial, and they were entitled to introduce proof to show that, as a matter of fact, Peter Merinovich was not their employee, but an independent contractor. However, in attempting to rebut the prima facie case made out by the plaintiffs, the burden of proof was cast upon the defendants to exhibit by a preponderance of evidence that the relationship of hirer and independent contractor existed. Corpus Juris, volume 39, pp. 1356 and 1357, informs: "On the other hand, if defendant claims that he is not liable because the work was being done by an independent contractor, the burden is upon him to prove such relationship, *especially where a prima facie case to show the relation of master and servant is made out, or where the facts recited are as consistent with the theory of the relationship of master and servant as with that of independent contractor.*" (Italics ours.)

Hence, the question arises: Have the defendants successfully carried that burden? There are numerous cases defining the relationship of hirer and independent contractor and distinguishing it from that of employer and employee. It is also well established that each case must stand upon its own particular facts, and that the prime factor to be considered in determining the relationship of the parties is the authority of the employer to exercise the right of supervision and control over the employee. In the case at bar, the contract to pay the Merinovich boys $1 per load had no definite term and was subject to termination by the defendants at will. This fact alone constitutes a strong indication that the relation created by the contract was that of master and servant. Moreover, there is nothing contained in defendants' evidence exhibiting that the defendants were unable to exercise the right to control the conduct of the Merinovich boys in the performance of their duties, or that the defendants did not have the power at any time to discharge them from the service for which they were employed. See Davidson v. American Drug Stores (La.App.) 175 So. 157. We hold that under the evidence presented the driver of the truck was the employee of the defendant copartnership.

Another factor which we have considered in determining the liability of defendants is their failure to place the Merinovich boys on the witness stand to substantiate the testimony tendered by them. There is a strong presumption arising from defendants' conduct in this respect to the effect that, had Peter and Tony Merinovich been produced as witnesses, their testimony would have been unfavorable to defendants' case. They were more available to the defendants than to the plaintiffs.

Counsel for defendants, however, assert that, because plaintiffs elected to bring their suit in Orleans parish instead of in the parish of Plaquemines, where the accident occurred and the Merinovich boys lived, the presumption arising from the defendants' failure to produce them should not be invoked, and that, if the suit had been brought in Plaquemines parish, plaintiffs could have compelled the Merinovich boys to appear and testify. This contention is unsound for two reasons: First, the law gave the plaintiffs the right to file their suit either where the accident occurred or where any one of the joint tortfeasors was domi-

ciled; and, second, the Merinovich boys were not properly witnesses of the plaintiff, but were highly necessary to the defense made in the case. As a matter of fact, we are of the opinion that the defendants deliberately kept these boys away from the courtroom. Their father was a party defendant, and we feel certain that he was in a position to produce them as witnesses.

Being of the view that the defendants are liable, it becomes our duty to fix the damages to be awarded to plaintiffs. The Taylor boy suffered a fracture of the middle third of the left .femur. He was admitted to the Charity Hospital for treatment on January 10, 1934, and was discharged February 7, 1934. Thereafter, he convalesced at the home of his aunt, Sophie Fountain. We find nothing in the record to justify the conclusion that the boy's leg did not heal, and at the present time he is without disability. Considering all of the circumstances of the case, we believe that an award for damages in the sum of $1,000 will adequately compensate for the injury. See Robichaux v. Dorion, 17 La.App. 159, 134 So. 784.

Finally, we consider the call in warranty by the defendant John Merinovich against the defendant Peter Taliancich. By written contract dated October 19, 1934, John Merinovich sold his right, title, and interest in the copartnership Victoria Navigation Company to the defendant Peter Taliancich, and that document contains the following provision: "The said Peter Taliancich assuming all the debts and liabilities, if any, that may be due by the partnership formerly conducted under the name of Victoria Navigation Company and the Launch Victoria."

This assumption by Peter Taliancich is clear and free from ambiguity. But his counsel contends that, inasmuch as the parties to the agreement were without knowledge of the occurrence of this accident, it was not their intention that Taliancich should assume the unknown debts or liabilities of the copartnership. Whether this be a fact or not, we are of the opinion that the assumption by Taliancich is sufficient to cover any and all liabilities that might have been due by the copartnership; particularly in view of the fact that the words "if any," with respect to the liabilities, are used in the assumption clause. These words indicate that there might have been certain unknown liabilities for which the copartnership could become liable, and if such was the case, Taliancich would assume their payment. We therefore hold that he is responsible in warranty to John Merinovich.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the district court be, and it is hereby, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiffs, William Taylor and Alma Smith, wife of William Taylor, for the use and benefit of their minor child, Joseph Taylor, against the Victoria Navigation Company, a commerical copartnership, composed of Peter Taliancich, Leopold Taliancich and John Merinovich and against the said Peter Taliancich, Leopold Taliancich, and John Merinovich individually and in solido for the full sum of $1,000, with legal interest thereon from judicial demand until paid, and for all costs of court.

It is further ordered, adjudged, and decreed that there be judgment in warranty in favor of John Merinovich and against Peter Taliancich for whatever sum or sums the said John Merinovich is compelled to pay under the judgment awarded to plaintiffs.

·Reversed.